IN RE DISQUALIFICATION OF FORCHIONE.

AFF OHIO, L.L.C. *v*. STARK CERAMICS, INC. ET AL.

[Cite as *In re Disqualification of Forchione,* 134 Ohio St.3d 1235,

2012-Ohio-6303.]

*Judges—Disqualification—Allegations of false statements and local bias—*
*Mediation attempts—Grounds for disqualification not established.*

(No. 12-AP-067—Decided July 24, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Stark County Court of Common Pleas

Case No. 2011-CV-04114.

_____

**O'CONNOR, C.J.**

**{¶ 1}** Edward Heben, counsel for plaintiff, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Frank G. Forchione from acting on any further proceedings in case No. 2011-CV-04114, now pending in the Court of Common Pleas of Stark County. Greg Kraus, general counsel for plaintiff, has filed a supplemental affidavit to disqualify Judge Forchione.

**{¶ 2}** Affiants allege that Judge Forchione is biased and prejudiced against the plaintiff and partial to defendants, who are mostly local Stark County businesses with local counsel. Affiant Heben claims that during the pendency of this case, Judge Forchione has "evinced a propensity to unjustly favor the bankrupt local Stark County Defendant Stark Ceramics and its President." Heben also alleges that Judge Forchione has exhibited "bias, prejudice, untruthfulness, intimidation, improper demeanor, and the appearance of impropriety and impartialness [sic]."

{¶ 3} Judge Forchione has responded in writing to the concerns raised in the affidavits, contending that the record is devoid of any actions demonstrating bias or prejudice against the plaintiff or its counsel. Judge Forchione also explains that the relationship between Heben and opposing counsel has been "contentious," and he specifically describes the conduct of Heben as "disrespectful, belligerent, and unprofessional."

{¶ 4} Jonathon M. Yarger, counsel for defendant Stark Ceramics, has also responded to Heben's affidavit of disqualification. Yarger does not directly address the allegations of bias or prejudice; instead, Yarger counters several statements in Heben's affidavit relating to the merits of the underlying proceeding.

{¶ 5} For the reasons explained below, no basis has been established for ordering the disqualification of Judge Forchione.

**Procedural History of the Underlying Case**

{¶ 6} In 2006, defendant Stark Ceramics defaulted on two loans it received from First Merit Bank, and the bank subsequently obtained a judgment lien attaching to defendant's real property. First Merit also received a Uniform Commercial Code ("UCC") security interest against the personal property of Stark Ceramics. Stark Ceramics eventually filed for bankruptcy, and during the bankruptcy, First Merit Bank assigned its interests in the judgment lien and the UCC security interest to plaintiff.

{¶ 7} According to plaintiff, Stark Ceramics has been selling timber, inventory, and equipment on the land that is subject to plaintiff's judgment lien or UCC security interest. On December 29, 2011, plaintiff filed its complaint, along with a motion for temporary restraining order and permanent injunction, to prevent further liquidation of the assets on the property. In addition to Stark Ceramics, plaintiff named several other defendants who were allegedly

2

purchasing or removing materials from the Stark Ceramics property. The case was assigned to Judge Forchione.

{¶ 8} Over the next four months, the parties stipulated to the terms of several preliminary injunctions, and plaintiff filed multiple motions to amend its complaint to add more defendants. On April 25, 2012, the parties participated in a court-ordered mediation, which the parties agreed could be led by Judge Forchione. On June 4 and June 6, 2012, Judge Forchione held hearings on plaintiff's motion for leave to file a second amended complaint and Stark Ceramics' motion to modify the terms of the preliminary injunction. According to Heben, at the June 6 hearing, Judge Forchione threatened to allow Stark Ceramics to sell property subject to plaintiff's judgment lien and UCC security interest to pay for environmental cleanup of the property.

{¶ 9} On June 8, 2012, Heben filed an affidavit of disqualification, and he filed an amended affidavit on July 9, 2012. A second mediation is scheduled for July 31, 2012.

{¶ 10} According to Judge Forchione, a "big problem" in the case is that the Stark Ceramics property is an environmental hazard that poses a health danger to the Stark County community. Judge Forchione asserts that the United States Environmental Protection Agency has threatened imposition of daily fines if cleanup does not begin soon.

**Waiver and Heben's Amended Affidavit**

{¶ 11} Affiant Heben has waived the right to assert some of his allegations against Judge Forchione.

{¶ 12} Affiants have filed three submissions to support their request for disqualification: (1) the original affidavit of disqualification, signed by attorney Heben and filed on June 8, 2012, (2) a supplemental affidavit, signed by Greg Kraus, general counsel for plaintiff, and filed on June 13, 2012, and (3) an "amended affidavit," signed by Heben and filed on July 9, 2012. Heben's original

3

affidavit alleges that Judge Forchione demonstrated bias and prejudice at the April 25 mediation and the June 4 and June 6 motion hearings. In the original affidavit, Heben requested leave to amend his affidavit within 30 days to review the transcripts of the hearings and to supplement the record based on that review.

{¶ 13} On June 19, 2012, Judge Forchione submitted his response to Heben's affidavit of disqualification, which addressed Heben's allegations relating to both the mediation and the hearings. On July 9, 2012, Heben filed the amended affidavit, but in addition to attaching the hearing transcripts, Heben set forth two new allegations, both of which relate to comments allegedly made by Judge Forchione during the February 3 and February 8, 2012 meetings in Judge Forchione's chambers.

{¶ 14} The new allegations are untimely and therefore waived. Heben was granted leave to amend his affidavit to review the transcripts of the June 4 and 6 hearings and to supplement the record with specific allegations of judicial bias and prejudice relating to those hearings. Heben did not obtain leave to amend his affidavit to raise new allegations that he could have raised in his original affidavit. It is well settled that "a party may be considered to have waived its objection to the judge when the objection is not raised in a timely fashion and the facts underlying the objection have been known to the party for some time." *In re Disqualification of O'Grady*, 77 Ohio St.3d 1240, 1241, 674 N.E.2d 353 (1996). If Heben believed that the complained-of conduct demonstrated bias or prejudice, he should have included the allegations in his original affidavit. Heben's attempt to set forth new allegations in an amended affidavit, which was filed after Judge Forchione had responded to the original affidavit, is impermissible. Because of the delay in raising the new allegations and Heben's failure to assert them in the original affidavit, Heben waived any objection to Judge Forchione's alleged conduct during the February 2012 in-chambers meetings.

**Allegations Relating to the April 25, 2012 Mediation**

{¶ 15} Affiants assert that Judge Forchione displayed bias and prejudice in four ways at the April 25, 2012 mediation. None are sufficient to support disqualification.

*Judge Forchione's relationship with attorney Callas and threats of sanctions*

{¶ 16} Heben asserts that in February 2012, he had an encounter with Gust Callas, counsel for defendant Slesnick Iron & Metal Company, during which, Heben claims, Callas indicated that he had a special relationship with Judge Forchione and if Heben did not dismiss the claims against Callas's client, Judge Forchione would sanction Heben. Heben claims that Judge Forchione then made the same threat during mediation. According to Heben, Judge Forchione stated he "did not take kindly to Plaintiff's filing of unsupported claims against multiple Stark County Defendants without a basis" and then "brought up" the issue of sanctions. Heben claims that Callas's threat, combined with Judge Forchione's familiarity with Callas and the same threat of sanctions, constitutes an "appearance of impropriety and bias and prejudice."

{¶ 17} In response, Judge Forchione avers that he has "no relationship with Attorney Callas, they do not socialize, they do not now, nor have they ever worked together, and they do not have any type of common business interest." Further, Judge Forchione states that after Heben informed him of Callas's alleged statement, he addressed the issue with Callas, who vehemently denied making the assertion. Attorney Callas also submitted a response to Heben's affidavit of disqualification, in which he denies making the statement. Judge Forchione did not specifically respond to the allegation that he "brought up" sanctions to plaintiff during mediation. However, he did explain that in his role as mediator, he points out "any and all potential pitfalls to each party in order to come to some type of resolution."

**{¶ 18}** Heben's claims are without merit. Heben has not offered any specific evidence to support his claim that a special relationship exists between Judge Forchione and Callas, and Judge Forchione denies any such relationship. Disqualification based on a special relationship, therefore, is not warranted. *See In re Disqualification of Kimbler*, 88 Ohio St.3d 1217, 723 N.E.2d 1104 (1999) (denying affidavit "[w]ithout specific evidence to support affiant's claim of a special relationship").

**{¶ 19}** Further, no appearance of impropriety exists. " 'The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lucci*, 117 Ohio St.3d 1242, 2006-Ohio-7230, 884 N.E.2d 1093, ¶ 8, quoting *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. It is not uncommon for litigants or judges to mention sanctions in response to what they perceive as frivolous claims. Absent some evidence of a special relationship between Callas and Judge Forchione, no reasonable and objective observer would question the judge's impartiality solely because both Callas and Judge Forchione "brought up" sanctions.

*Statements made in mediation about a possible jury verdict*

**{¶ 20}** Affiants next claim that during mediation, Judge Forchione exhibited bias and prejudice by attempting to coerce a settlement when he threatened to submit the issue of the amount of the judgment lien to the jury, which affiants claim is not a disputed matter for the jury. In response, Judge Forchione acknowledges that in mediations, he discusses with each side the potential strengths and weaknesses in the case, including unfavorable jury verdicts.

{¶ 21} Judge Forchione's conduct here does not demonstrate bias or prejudice. A judge will not be disqualified based solely on the fact that he or she participated in settlement discussions. *In re Disqualification of Sheward*, 100 Ohio St.3d 1221, 2002-Ohio-7473, 798 N.E.2d 8, ¶ 5. In addition, an attorney cannot acquiesce in a judge's participation in settlement negotiations and later try to have that judge disqualified because counsel did not like the judge's proposed settlement. *See, e.g., In re Disqualification of Nadel*, 74 Ohio St.3d 1214, 657 N.E.2d 1329 (1989), quoting Annotation, *Waiver or Loss of Right to Disqualify Judge by Participation in Proceedings—Modern State Criminal Cases,* 27 A.L.R.4th 597, 605 (1984) (" '[A] party should not be permitted to participate in an action or proceedings to the extent that he is able to ascertain the attitude of the judge toward important aspects of his case and then avoid an adverse ruling by belatedly raising the issue of disqualification' "). Thus, Judge Forchione's attempt to mediate the case is not grounds for disqualification, and the fact that affiants consented to the judge acting as a mediator prevents them from now requesting disqualification in order to avoid a potential adverse future ruling.

{¶ 22} Further, during negotiations, a judge may choose to outline certain factors as a means of facilitating settlement, but such conduct does not establish bias or prejudice on the part of the judge. *In re Disqualification of Solovan*, 101 Ohio St.3d 1222, 2003-Ohio-7353, 803 N.E.2d 821, ¶ 4. Accordingly, the mere fact that Judge Forchione chose to discuss the possibility of an unfavorable jury verdict does not itself establish the existence of bias or prejudice. *See, e.g.*, *id.* (finding no bias or prejudice by the fact that the judge outlined the possibility of prejudgment interest during a pretrial conference as a means to facilitate settlement).

{¶ 23} Likewise, the fact that Judge Forchione may have expressed a conditional opinion about plaintiff's case does not warrant disqualification. " 'A judge rarely hears preliminary aspects of a case without forming conditional

opinions of the facts or law. These conditional opinions often assist the parties and their counsel in identifying and narrowing the issue in controversy and facilitate the settlement of cases prior to trial.' " *In re Disqualification of Horvath*, 105 Ohio St.3d 1247, 2004-Ohio-7356, 826 N.E.2d 305, ¶ 8, quoting *In re Disqualification of Brown,* 74 Ohio St.3d 1250, 1251, 657 N.E.2d 1353 (1993). However, these conditional opinions are not sufficient to counter the presumption of a judge's ability to render a fair decision based on the evidence later presented at trial. *Id.* Here, the record does not indicate that Judge Forchione has formed anything more than a conditional opinion, which is insufficient to demonstrate bias or prejudice.

{¶ 24} Finally, affiants' allegations rest wholly on their legal conclusion that the amount of the judgment lien is already fixed and therefore not an issue for the jury. However, according to attorney Yarger's response to Heben's affidavit of disqualification, Stark Ceramics very much disputes the amount due on the judgment lien, especially in light of Stark Ceramics' counterclaims against plaintiff. Thus, the record does not establish that it was improper for Judge Forchione to warn plaintiff of potential adverse consequences should an agreement not be reached in mediation.

*Local bias*

{¶ 25} In Kraus's affidavit, he states that on numerous occasions during the mediation, Judge Forchione emphasized that plaintiff was an "outsider" and "didn't understand the way things work in Canton." Kraus claims these and similar statements demonstrate a bias against plaintiff. In response, Judge Forchione states that there is no bias against plaintiff in the record, and he points out that there have not been any adverse rulings against it. Judge Forchione admits he made statements such as "Stark County has been hit hard by unemployment" and "[W]hat would you do if the jury returned a verdict of only $50,000.00?" But Judge Forchione explains that in the "role of Mediator," he

routinely points out "any and all potential pitfalls to each party in order to come to some type of resolution," and he always informs the parties that "Stark County has a history of issuing very conservative jury verdicts."

{¶ 26} Kraus has again failed to establish that these comments demonstrate judicial bias or prejudice. "A judge is presumed to be fair and impartial and able to decide cases pending before him or her in accordance with the law and without regard to personal considerations." *In re Disqualification of Sadler*, 100 Ohio St.3d 1220, 2002-Ohio-7472, 798 N.E.2d 7. Thus, it is presumed that any comments about Stark County were made as part of the judge's mediation practice of pointing out all the "potential pitfalls" to each party. In light of Judge Forchione's denial of any bias against plaintiff and his explanation of his role as mediator, Kraus has not overcome the presumption of impartiality here.

*Untruthfulness*

{¶ 27} Affiants next allege that Judge Forchione was untruthful during the mediation. Specifically, affiants assert that when discussing a global settlement option during the mediation, Judge Forchione represented that all of the defendants were present in another room. Affiants claim that they later discovered that not all of the defendants were present and that Judge Forchione's office had called one of the attorneys the previous day and "informed him that he did not have to attend the mediation."

{¶ 28} Even accepting affiants' allegation as true, given the number of defendants and counsel in this case, Judge Forchione could have mistakenly believed that all defendants and their counsel were present. Regardless, claiming that a judge has been untruthful is a serious allegation. According to affiants, one of a defendant's counsel told them that the common pleas court had instructed them not to attend. Yet affiants offer no third-party affidavits or other evidence from this attorney to support this claim. "Allegations that are based solely on

hearsay, innuendo, and speculation * * * are insufficient to establish bias or prejudice." *In re Disqualification of Flanagan*, 127 Ohio St.3d 1236, 2009-Ohio-7199, 937 N.E.2d 1023, ¶ 4, citing *In re Disqualification of Walker*, 36 Ohio St.3d 606, 522 N.E.2d 460 (1988) (vague, unsubstantiated allegations are insufficient to establish bias or prejudice). Because affiants' claim is based on hearsay, rather than any probative evidence, the allegation is insufficient to establish bias.

**Allegations Relating to the June 4 and June 6 Hearings**

{¶ 29} Heben claims that Judge Forchione was hostile to him during the June 4 and 6 hearings. Specifically, Heben alleges that Judge Forchione repeatedly threatened to sanction and jail him if plaintiff did not dismiss certain defendants and that Judge Forchione "excoriated" him and "verbally attacked" him for filing two briefs within an hour before the start of the June 4 hearing. According to Heben, Judge Forchione interrupted him and glared at him in an "intimidating manner" during his opening statement, and Judge Forchione instructed an armed deputy to stand behind the counsel table. Finally, Heben asserts that Judge Forchione stated that he was going to "allow Stark Ceramics to sell hundreds of thousands of dollars of property, *subject to the Plaintiff's judgment lien and the UCC financing statement*, without having to pay the secured creditor the Plaintiff a penny." (Emphasis sic.)

{¶ 30} Heben's allegations are not properly substantiated. Despite being granted leave to amend his initial affidavit with evidence from the June hearings, Heben has not provided any citations to the transcript identifying these alleged threats and verbal attacks. In proceedings on an affidavit of disqualification, the burden falls on the affiant to submit sufficient evidence that supports disqualification. R.C. 2701.03(B)(1) (requiring affiant to include specific allegations of bias, prejudice, or disqualifying interest and the facts to support those allegations). Heben submitted the 81-page June 4 transcript and the 140-page June 6 transcript. It is not the chief justice's job, however, to sift through

hundreds of pages of transcript to find support for Heben's allegations or to speculate what conduct he considers hostile. *See, e.g.*, *In re Disqualification of Mitrovich*, 101 Ohio St.3d 1214, 2003-Ohio-7358, 803 N.E.2d 816, ¶ 4 ("An affidavit must describe with specificity and particularity those facts alleged to support the claim of bias or prejudice").

**{¶ 31}** In contrast, Judge Forchione cites and quotes portions of the transcript in his response wherein he warned counsel of sanctions. The quoted portions in Judge Forchione's response do not demonstrate any bias or prejudice toward plaintiff or its counsel that would require disqualification. Moreover, according to the transcript portions provided by Judge Forchione, his warnings were directed at all counsel, not only Heben. While Judge Forchione used strong words to illustrate what he considers disrespectful practice in his courtroom, his remarks do not lead to the conclusion that he would not approach the case in a fair and impartial way. A judge is "entitled to express dissatisfaction about attorneys' conduct and tactics inside and outside the courtroom, as long as the judge's dissatisfaction is 'expressed in a way that promotes public confidence in the integrity, dignity, and impartiality of the judiciary.' " *In re Disqualification of Synenberg*, 127 Ohio St.3d 1220, 2009-Ohio-7206, 937 N.E.2d 1011, ¶ 24, quoting *In re Disqualification of Corrigan*, 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302, ¶ 10. Based on the quoted portions in Judge Forchione's response, that standard was met here.

### Judge Forchione's Response

**{¶ 32}** In his amended affidavit, Heben also asserts that Judge Forchione's response to the original affidavit of disqualification reflects bias and prejudice against Heben. These claims also lack merit.

**{¶ 33}** Heben first asserts that Judge Forchione's reference to a previous case involving the same attorneys is an attempt to malign Heben's integrity. Judge Forchione's reference to the previous litigation was unnecessary. Judge

Forchione did not preside over the prior case and had no personal knowledge of the attorney conduct in that case. As the Code of Judicial Conduct directs, judges should be "patient, dignified, and courteous" to litigants, lawyers, and others in an official capacity, and should refrain from using words or conduct that might manifest bias or prejudice. Jud.Cond.R. 2.8(B) and 2.3(B). Nevertheless, Judge Forchione's reference to that litigation, while misguided, does not convey the impression that he has developed a "hostile feeling or spirit of ill will" or reached a "fixed anticipatory judgment" that will prevent him from presiding over the case with an "open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956).

**{¶ 34}** Heben next asserts that Judge Forchione's statement that "[t]he security interest does not cover timber or fixtures" is prejudicial because Judge Forchione is making a determination about the scope of the judgment lien without any presentation of the evidence. First, the statement is ambiguous, as it is unclear whether Judge Forchione is referring to the judgment lien or the UCC security interest. Therefore, the statement does not lead to the conclusion, as Heben alleges, that Judge Forchione has already determined the scope of the judgment lien. And even if the statement had a clear meaning, as explained above, "[a] judge rarely hears preliminary aspects of the case without forming conditional opinions of the facts or law," and the "formation of these conditional opinions is not sufficient to counter the presumption of the judge's ability to render a fair decision based upon the evidence later presented at trial." *In re Disqualification of Brown*, 74 Ohio St.3d 1250, 1251, 657 N.E.2d 1353 (1993). Given that the parties are still attempting to mediate this dispute, Judge Forchione's statement is more akin to a conditional opinion than a fixed judgment.

**{¶ 35}** Finally, to the extent that Heben is arguing that Judge Forchione's interpretation of the security interest or judgment lien is legally incorrect, an

affidavit of disqualification is not the proper vehicle to contest a judge's alleged misinterpretation of the law or facts. *See, e.g., In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4 (an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law"). "Procedures exist by which appellate courts may review—and, if necessary, correct—rulings made by trial courts." *In re Disqualification of Russo*, 110 Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6. The chief justice, however, does not review alleged legal errors in deciding an affidavit of disqualification. *Id*.

## Conclusion

**{¶ 36}** The disqualification of a judge is an extraordinary remedy. *In re Disqualification of O'Neill*, 100 Ohio St.3d 1232, 2002-Ohio-7479, 798 N.E.2d 17, ¶ 15, citing *In re Disqualification of Hunter*, 36 Ohio St.3d 607, 522 N.E.2d 461 (1988). "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome here.

**{¶ 37}** For the reasons stated above, the affidavits of disqualification are denied. The case may proceed before Judge Forchione.

————————————